UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2026 AUG 27 P 12: 24
U.S. DISTRICT COURT
DISTRICT OF MASS.

KATLIN ATAALLAH,
Plaintiff,

v.

TRANS UNION LLC,
Defendant.

Civil Action No. ____________

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Katlin Ataallah, appearing pro se, alleges as follows for her Complaint against Defendant Trans Union LLC:

1. This is an action for damages and injunctive relief brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), arising from Defendant's disclosure of Plaintiff's consumer file in a form that is neither clear nor accurate, in violation of 15 U.S.C. § 1681g(a)(1) and (a)(3), and from Defendant's failure to follow reasonable procedures to assure the maximum possible accuracy of information in Plaintiff's consumer file, in violation of 15 U.S.C. § 1681e(b).

2. On August 21, 2026, Plaintiff requested and received Defendant's disclosure of the information in her consumer file. That disclosure conflates the identity of two separate tradelines within a single, continuous table; reports a Federal Perkins Loan account as having been opened in January 2025, more than six years after federal law prohibited the origination of any new Federal Perkins Loan; continues to update historical balance and credit limit fields on an account closed since 2021; and omits years of payment history on three closed student loan tradelines furnished by the same servicer.

3. On or about January 20, 2026, Goldman Sachs Bank USA denied Plaintiff's application for an Apple Card, citing, among other reasons, "Serious delinquency and public record or collection filed," and stating that it had received Plaintiff's credit score from Defendant, TransUnion Consumer Solutions.

4. Defendant's own disclosure, described in detail below, demonstrates that Defendant possesses data concerning Plaintiff's accounts that its disclosure to Plaintiff misattributes, misstates, or omits, in a form that materially impaired Plaintiff's ability to identify and correct inaccurate information in her file before that information was furnished to a creditor and used to deny her application for credit.

5. Plaintiff seeks statutory, actual, and punitive damages, costs, and injunctive relief requiring Defendant to provide Plaintiff a complete, accurate, and internally consistent disclosure of her consumer file.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiff resides in this District, Defendant transacts business in this District, and a substantial part of the events giving rise to this action occurred in this District.

8. This action is timely under 15 U.S.C. § 1681p. Plaintiff discovered the violations alleged herein on August 21, 2026, the date she received the disclosure described below, which is within

two years of the filing of this Complaint and within five years of the events giving rise to this action.

## PARTIES

9. Plaintiff Katlin Ataallah is a natural person and a "consumer" as defined by 15 U.S.C. § 1681a(c), residing at 5 Fan Pier Blvd, Unit 619, Boston, Massachusetts 02210.

10. Defendant Trans Union LLC is a Delaware limited liability company with its principal place of business at 555 West Adams Street, Chicago, Illinois 60661. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f), regularly engages in the practice of assembling and evaluating consumer credit information for the purpose of furnishing consumer reports to third parties, and regularly conducts business in the Commonwealth of Massachusetts and in this District.

## FACTUAL ALLEGATIONS

### A. Defendant's Automated Disclosure System and Statutory Duty

11. On August 21, 2026, Plaintiff requested and received from Defendant a disclosure of the information in her consumer file, identified by Defendant as File Number 328735201 (the "Disclosure"). A true and accurate copy of the fifty-nine page Disclosure is attached as Exhibit A.

12. Every page of the Disclosure bears the notation "View Credit Report | TransUnion Online Service Center" and the web address "https://annualcreditreport.transunion.com/cvd/?enterprise=FactAct#/disclosureCategories,"

confirming that the Disclosure was generated by Defendant's automated online disclosure system for requests made through annualcreditreport.com.

13. On information and belief, Defendant generates file disclosures made through that system, including the Disclosure at issue here, using automated templates and business rules that produce the omissions and internal inconsistencies described below, consistent with allegations of automated-template-driven disclosure defects found sufficient to plead willfulness and standing against a credit reporting agency using the same annualcreditreport.com delivery mechanism. See Stafford v. Trans Union, LLC / Equifax, No. 4:25-cv-00921-JDK (E.D. Tex.), Report and Recommendation, Doc. 25 (Nov. 17, 2025), at 4-6.

14. Under 15 U.S.C. § 1681g(a)(1), a consumer reporting agency must, upon request, "clearly and accurately disclose to the consumer . . . all information in the consumer's file at the time of the request."

15. The term "file" is separately defined at 15 U.S.C. § 1681a(g) to mean "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." Congress's use of the term "file," rather than the separately defined term "consumer report," in section 1681g(a)(1) reflects a deliberate choice to impose a disclosure obligation broader than the definition of "consumer report." See Nunnally v. Equifax Info. Servs., LLC, 451 F.3d 768, 773 (11th Cir. 2006); Cortez v. Trans Union, LLC, 617 F.3d 688, 712 (3d Cir. 2010).

16. Some consumer reporting agencies have argued that the term "file" for purposes of section 1681g(a)(1) excludes information, such as full payment history and original creditor identity, that does not itself bear on a consumer's creditworthiness. See Gillespie v. Trans Union Corp., 482

F.3d 907, 910 (7th Cir. 2007). Courts considering that argument have rejected it, holding that section 1681g(a)(1) imposes a disclosure duty distinct from, and broader than, the inaccurate reporting provisions of the FCRA, and does not require a plaintiff to plead that the omitted information independently bears on the consumer's creditworthiness. See Blevins v. Equifax Info. Servs., LLC, No. 25-cv-23481-BB (S.D. Fla.), Order, Dkt. 24, at 3-5 (Dec. 29, 2025); Stafford, Doc. 25, at 2-7.

17. The information described below that Defendant's Disclosure omits, misattributes, or misstates was furnished to Defendant by creditors and other furnishers of information and appears in the consumer reports and credit score products Defendant sells to subscribers, including the report or score Defendant furnished to Goldman Sachs Bank USA described below; it is not internal record-keeping data of the kind at issue in Gillespie.

18. The disclosure obligation imposed by section 1681g(a)(1) exists in part to allow consumers to identify inaccurate or incomplete information in their files and correct it through the dispute procedure established at 15 U.S.C. § 1681i. See TransUnion LLC v. Ramirez, 594 U.S. 413, 440 (2021). Knowing the actual date an account originated, and being able to identify which tradeline's data is reported at a given point in a disclosure, are each essential to a consumer's ability to verify her accounts and exercise her dispute rights in an informed manner. The omissions, misattribution, and internal inconsistencies described below hinder Plaintiff's ability to do so.

<u>**B. The Macy's/Citibank Account and the Header Misattribution**</u>

19. The Disclosure lists a revolving charge account identified as "MACYS/CITIBANK, N.A. 603534049361****," opened May 10, 2013, with a reported balance of $1,225, a "Pay Status" of

">Charge-off<," a "Date Closed" of March 14, 2021, and a "Last Payment Made" of November 10, 2020 (the "Macy's Account").

20. The Disclosure states the Macy's Account's "High Balance (Hist.)" as "$1,377 from 02/2024 to 08/2026" and its "Credit Limit (Hist.)" as "$900 from 02/2024 to 08/2026," and states the account was most recently "Date Updated 08/14/2026," notwithstanding that the account had been closed, and had received no payment, for more than three years before the beginning of that historical date range.

21. The Macy's Account's monthly payment history, as disclosed, reports an identical remark code, "CBG/>PRL<," an identical rating of "C/O," and an identical balance and past-due figure of "$1,225" for every month from October 2024 through August 2026.

22. Between the payment history entries for December 2025 and January 2026, in the midst of that unbroken monthly table, the Disclosure displays the header "US DEPT OF EDUCATION 6464****," the name and partial account number of a different tradeline entirely, immediately before payment history entries that continue, without interruption, to report the Macy's Account's own $1,225 balance and "CBG/>PRL<" remark through August 2026, and before Defendant's Account Information fields for the actual U.S. Department of Education tradeline are separately presented.

23. As a result of this defect, the Disclosure does not clearly identify which of Plaintiff's two accounts is described at that point in the document, and conflates the identity of two distinct tradelines within a single continuous table.

**<u>C. The Perkins Loan Account</u>**

24. The Disclosure separately lists an account identified as "US DEPT OF EDUCATION 6464****," with a stated address of "3130 Fairview Park Drive, Suite 800, Falls Church, VA 23323," a "Loan Type" of "STUDENT LOAN," an "Original Creditor" of "PERKINS LOANS," a "Pay Status" of ">Collection<," a "Date Opened" of January 8, 2025, and a "Date Closed" of March 28, 2025 (the "Perkins Account").

25. The zip code "23323" listed in the Perkins Account's furnisher address corresponds to Chesapeake, Virginia, not Falls Church, Virginia, the city listed in the same address field.

26. The Federal Perkins Loan Program's statutory authority to originate new loans expired on September 30, 2017, under the Federal Perkins Loan Program Extension Act of 2015, with final disbursements to previously approved borrowers permitted no later than June 30, 2018. No Federal Perkins Loan has been originated on or after July 1, 2018.

27. The Perkins Account's displayed "Date Opened" of January 8, 2025 is therefore false. On information and belief, the underlying Perkins Loan was originated on or before June 30, 2018, more than six years before the date Defendant discloses, and the date Defendant displays reflects, at most, a collection, assignment, or servicing-transfer date, not the date the loan was made.

28. The Disclosure further states the Perkins Account's "High Balance (Hist.)" as "$1,225 from 03/2025 to 02/2026; $1,225 from 04/2026 to 06/2026," a historical range that omits March 2026 entirely without explanation.

**D. Three Closed Department of Education Installment Accounts**

29. The Disclosure lists an installment student loan tradeline furnished by "DEPT OF ED/AIDV," with a "Date Opened" of April 29, 2014, a "Date Updated" of October 16, 2019, a

"High Balance" of $3,500, and a "Pay Status" of "Paid, Closed; was Paid as agreed" (an account open for more than five years before closing).

30. The Disclosure lists two additional installment student loan tradelines, each furnished by "DEPT OF ED/AIDV," each with a "Date Opened" of September 15, 2017, a "Date Updated" of October 16, 2019, and a "Pay Status" of "Paid, Closed; was Paid as agreed," one with a "High Balance" of $2,250 and the other with a "High Balance" of $1,000 (each an account open for more than two years before closing).

31. For each of these three tradelines, the Disclosure presents only four months of payment history entries, rated "OK," "OK," "X," and "OK" for June, July, August, and September of 2019 respectively, and no payment history entries for any other month during which the accounts were open.

32. On information and belief, furnishers of installment loan tradelines such as these report payment status, scheduled payment amount, and related data to consumer reporting agencies, including Defendant, on a monthly basis throughout the life of an account, consistent with the Credit Reporting Resource Guide's Metro 2 furnishing standards. Plaintiff cites these industry reporting standards solely as factual support for the allegation, on information and belief, that these furnishers reported this data to Defendant on a monthly basis for the full duration each account was open, not as an independent basis for liability.

33. To the extent Defendant contends that any furnisher failed to report the missing payment-history months described above, that is a factual question concerning the operation of Defendant's own furnisher-intake and disclosure-generation systems; it is not a defense to

Defendant's independent duty under 15 U.S.C. § 1681g(a)(1) to disclose, clearly and accurately, all information Defendant did in fact record and retain.

## E. Omission of a Procuring Party from the Disclosure's Inquiry Record

34. On or about January 20, 2026, Goldman Sachs Bank USA reviewed Plaintiff's application for an Apple Card and, in doing so, obtained Plaintiff's credit score from Defendant, as described in Paragraph 39 below.

35. Under 15 U.S.C. § 1681g(a)(3), a consumer reporting agency must, upon request, disclose the identity of each person that procured a consumer report concerning the consumer within the one-year period preceding the request, other than for employment purposes.

36. The Disclosure's inquiry sections list numerous "Promotional" and "Account Review" inquiries but do not list Goldman Sachs Bank USA, Apple, or any inquiry associated with the Apple Card application anywhere in either section, notwithstanding that Goldman Sachs Bank USA's receipt of Plaintiff's credit score from Defendant on or about January 20, 2026 falls within the one-year period preceding the August 21, 2026 Disclosure.

## F. Defendant's Sale of Complete Tradeline Data to Subscribers

37. On information and belief, Defendant sells to its subscribers, including Goldman Sachs Bank USA, consumer report and credit score products containing account histories, origination dates, and other tradeline detail in the same categories that are missing, misattributed, or misstated in the Disclosure Plaintiff received.

## G. No Cure Elsewhere in the Disclosure

38. Nothing elsewhere in the fifty-nine pages of the Disclosure supplies the omitted or corrected information described above or cures the deficiencies identified herein. The accurate origination date of the Perkins Account, the source of the header misattribution affecting the Macy's Account, and the missing payment-history months for the three Department of Education installment tradelines described above appear nowhere else in the document.

**H. Dissemination and the Denial of Plaintiff's Apple Card Application**

39. On or about January 20, 2026, Goldman Sachs Bank USA denied Plaintiff's application for an Apple Card. In its written notice of that decision, Goldman Sachs Bank USA stated that the application "was not approved at this time because" of, among other reasons, "Serious delinquency and public record or collection filed" and "Proportion of balances to credit limits on bank/national revolving or other revolving accounts is too high." The notice further stated: "Goldman Sachs Bank USA received your credit score from TransUnion Consumer Solutions," and disclosed a credit score of 620 "as of January 20, 2026." A true and accurate copy of this notice is attached as Exhibit E.

40. The only tradeline on Plaintiff's file described as a "collection" is the Perkins Account described above, whose displayed origination date is false for the reasons stated in Paragraphs 26-27. On information and belief, the consumer report or credit score Defendant furnished to Goldman Sachs Bank USA in connection with Plaintiff's Apple Card application included the Perkins Account.

41. Whether the omissions, misattributions, and internal inconsistencies described above reflect furnisher non-reporting, as Defendant may contend, or reflect Defendant's own maintenance, generation, and withholding of the data through the automated disclosure system described in

Paragraphs 12-13, as Plaintiff alleges, is ascertainable only from Defendant's own systems and from the consumer report and credit score products Defendant furnished to Goldman Sachs Bank USA and other subscribers. Plaintiff will seek that information in discovery.

**I. Willfulness**

42. The Consumer Financial Protection Bureau's Advisory Opinion on File Disclosure, 89 Fed. Reg. 4167 (Jan. 23, 2024), confirms that a consumer reporting agency's obligation under 15 U.S.C. § 1681g(a)(1) requires disclosure of all information in the consumer's file, in a form the consumer can understand and use, including tradeline data of the kind at issue here. The Disclosure at issue in this action was generated more than two and a half years after that Advisory Opinion, on August 21, 2026. After the Advisory Opinion, no reading of "file" that excludes furnished tradeline data of the kind described in this Complaint remained an objectively reasonable interpretation of the statute within the meaning of Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 69-70 (2007).

43. The Federal Trade Commission's Advisory Opinion to Darcy (June 30, 2000) has given consumer reporting agencies notice for more than twenty-five years that truncating or omitting information from a consumer's file disclosure fails to satisfy the "all information" requirement of section 1681g(a)(1).

44. The identical, uninterrupted four-month payment-history presentation across three separate Department of Education installment tradelines, described in Paragraphs 29-31 above, each opened in a different year and closed on the same date, reflects a uniform omission pattern rather than an isolated furnisher error, consistent with a systemic, automated disclosure practice rather

than a series of unrelated mistakes. See Williams v. First Advantage LNS Screening Solutions, Inc., 947 F.3d 735 (11th Cir. 2020).

45. Defendant's conduct in disclosing Plaintiff's file in the manner described in this Complaint was willful within the meaning of 15 U.S.C. § 1681n(a), in that Defendant knowingly and intentionally committed acts in conscious disregard for Plaintiff's rights under the FCRA, or, at a minimum, acted in reckless disregard of Plaintiff's statutory rights. See Safeco, 551 U.S. at 57; Cousin v. Trans Union Corp., 246 F.3d 359, 372 (5th Cir. 2001).

**J. Damages**

46. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered actual damages, including but not limited to those described below.

47. Denial of credit. On or about January 20, 2026, Goldman Sachs Bank USA denied Plaintiff's application for an Apple Card for reasons including "Serious delinquency and public record or collection filed," citing a credit score obtained from Defendant, as described in Paragraph 39 above and shown in Exhibit E.

48. Informational injury. Plaintiff has been denied her statutory right to know, clearly and accurately, the true contents of her own consumer file, including the actual origination date of the Perkins Account and the identity of the tradeline described in the misattributed portion of the Macy's Account's payment history, impairing her ability to verify $1,225 in balances reported on the Macy's Account and $1,212 in balances reported on the Perkins Account, and impairing her ability to exercise her dispute rights under 15 U.S.C. § 1681i in an informed manner.

49. Dissemination-based injury. Defendant furnished a consumer report or credit score containing the inaccurate and internally inconsistent data described above to Goldman Sachs Bank USA, a third party, which relied on that information, together with other reasons, to deny Plaintiff's application for credit. See Tailford v. Experian Info. Solutions, Inc., 26 F.4th 1092 (9th Cir. 2022).

50. Emotional distress. Plaintiff has experienced frustration, anxiety, and distress from being denied a credit product she sought, from learning that her consumer file contains a collection account bearing a false origination date that she has been unable to verify, and from discovering that Defendant's own disclosure conflates the identity of two of her accounts.

51. Time and resources. Plaintiff has expended time and effort reviewing, cross-referencing, and attempting to understand the Disclosure, and in preparing this action.

52. Standing. Plaintiff's actual damages described in Paragraphs 47-51 above independently satisfy the concrete-injury requirement of Article III under TransUnion LLC v. Ramirez, 594 U.S. 413 (2021), regardless of whether the Court finds Defendant's conduct willful. Plaintiff's allegations of willfulness, described in Paragraphs 42-45 above, independently support statutory-damages standing under Safeco, 551 U.S. at 54, and Killingsworth v. HSBC Bank Nevada, N.A., 507 F.3d 614, 622 (7th Cir. 2007).

## COUNT I

## VIOLATION OF 15 U.S.C. § 1681g(a)(1) AND (a)(3)

## (Willful Noncompliance, 15 U.S.C. § 1681n)

53. Plaintiff repeats and incorporates by reference each of the allegations set forth in Paragraphs 1 through 52 above as if fully set forth herein.

54. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

55. Defendant was required, under 15 U.S.C. § 1681g(a)(1), to clearly and accurately disclose to Plaintiff all information in her consumer file, and, under 15 U.S.C. § 1681g(a)(3), to disclose the identity of each person that procured a consumer report concerning Plaintiff within the one-year period preceding her request.

56. Defendant violated 15 U.S.C. § 1681g(a)(1) by disclosing Plaintiff's file in a manner that conflated the identity of the Macy's Account and the Perkins Account, misstated the origination date of the Perkins Account, continued to update historical balance and credit limit fields on the closed Macy's Account, and omitted years of payment history from three closed Department of Education installment tradelines, as described in Paragraphs 19-33 above.

57. Defendant violated 15 U.S.C. § 1681g(a)(3) by failing to disclose Goldman Sachs Bank USA as a person that procured a consumer report or credit score concerning Plaintiff within the one-year period preceding the Disclosure, as described in Paragraphs 34-36 above.

58. Defendant's violations of 15 U.S.C. § 1681g(a)(1) and (a)(3) were willful, as described in Paragraphs 42-45 above.

59. As a direct and proximate result of Defendant's willful violations, Plaintiff suffered actual damages as described in Paragraphs 46-52 above, and is entitled to statutory damages of not less than $100 and not more than $1,000 per violation, punitive damages, and costs, pursuant to 15 U.S.C. § 1681n(a).

## COUNT II

## VIOLATION OF 15 U.S.C. § 1681g(a)(1) AND (a)(3)

## (Negligent Noncompliance, 15 U.S.C. § 1681o, Pled in the Alternative)

60. Plaintiff repeats and incorporates by reference each of the allegations set forth in Paragraphs 1 through 52 above as if fully set forth herein.

61. In the alternative to Count I, and only to the extent the Court finds Defendant's conduct described in Paragraphs 56-57 above was not willful, Defendant negligently failed to comply with 15 U.S.C. § 1681g(a)(1) and (a)(3), as described above.

62. As a direct and proximate result of Defendant's negligence, Plaintiff suffered actual damages as described in Paragraphs 46-52 above, and is entitled to actual damages and costs pursuant to 15 U.S.C. § 1681o(a).

## COUNT III

## VIOLATION OF 15 U.S.C. § 1681e(b)

## (Willful Noncompliance, 15 U.S.C. § 1681n)

63. Plaintiff repeats and incorporates by reference each of the allegations set forth in Paragraphs 1 through 52 above as if fully set forth herein.

64. Under 15 U.S.C. § 1681e(b), a consumer reporting agency must follow reasonable procedures to assure maximum possible accuracy of the information it reports concerning any consumer.

65. The Perkins Account's displayed "Date Opened" of January 8, 2025 is a specific, factual statement that a jury could find false or materially misleading, given that no Federal Perkins Loan could lawfully have been originated after June 30, 2018, as described in Paragraphs 24-27 above. See McIntyre v. RentGrow, Inc., 34 F.4th 87, 96 (1st Cir. 2022).

66. On information and belief, the underlying Perkins Loan was, in fact, originated on or before June 30, 2018, as described in Paragraph 27 above.

67. Defendant disseminated the Perkins Account, including its false origination date, to Goldman Sachs Bank USA on or about January 20, 2026, in connection with Plaintiff's Apple Card application, as described in Paragraphs 39-40 above.

68. Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the Perkins Account's origination date, in violation of 15 U.S.C. § 1681e(b), and that failure was willful, as described in Paragraphs 42-45 above.

69. As a direct and proximate result of Defendant's willful violation, Plaintiff suffered actual damages as described in Paragraphs 46-52 above, and is entitled to statutory damages of not less than $100 and not more than $1,000, punitive damages, and costs, pursuant to 15 U.S.C. § 1681n(a).

## COUNT IV

## VIOLATION OF 15 U.S.C. § 1681e(b)

## (Negligent Noncompliance, 15 U.S.C. § 1681o, Pled in the Alternative)

70. Plaintiff repeats and incorporates by reference each of the allegations set forth in Paragraphs 1 through 52 above as if fully set forth herein.

71. In the alternative to Count III, and only to the extent the Court finds Defendant's conduct described in Paragraphs 64-68 above was not willful, Defendant negligently failed to follow reasonable procedures to assure maximum possible accuracy of the Perkins Account's origination date, in violation of 15 U.S.C. § 1681e(b).

72. As a direct and proximate result of Defendant's negligence, Plaintiff suffered actual damages as described in Paragraphs 46-52 above, and is entitled to actual damages and costs pursuant to 15 U.S.C. § 1681o(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Katlin Ataallah respectfully requests that this Court enter judgment in her favor and against Defendant Trans Union LLC as follows:

(a) Statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A) of not less than $100 and not more than $1,000 for each willful violation found under Counts I and III;

(b) Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) in an amount to be determined at trial;

(c) In the alternative, actual damages pursuant to 15 U.S.C. § 1681o(a)(1) for each negligent violation found under Counts II and IV;

(d) An order requiring Defendant to provide Plaintiff a complete, accurate, and internally consistent disclosure of her consumer file that corrects the deficiencies described in this Complaint;

(e) Costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

(f) A finding that, because Plaintiff has not sent Defendant a written dispute regarding the tradelines described in this Complaint as of the filing of this action, Plaintiff does not assert a claim under 15 U.S.C. § 1681i at this time, without prejudice to Plaintiff's right to seek leave to amend this Complaint should such a dispute and Defendant's response to it give rise to a viable claim under that section; and

(g) Such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Katlin Ataallah
Katlin Ataallah, Plaintiff Pro Se
5 Fan Pier Blvd, Unit 619
Boston, MA 02210

Dated: ______________________, 2026